UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY LEE COLEMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case no. 4:05cv0613 TCM |
| ) | |
| DON ROPER and ) | |
| JEREMIAH (JAY) W. NIXON, ) | |
| Attorney General for the State of ) | |
| Missouri, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Larry Lee Coleman, a Missouri prisoner, for federal habeas corpus relief is before the undersigned Magistrate Judge for a final disposition pursuant to the parties' written consent. See 28 U.S. C. § 636(c).

### Background

Larry Lee Coleman ("Petitioner") was charged in 1998 with six counts of first degree robbery, one count of second degree burglary, one count of possession of a defaced firearm, one count of first degree sexual misconduct, one count of resisting arrest, four counts of first degree attempted robbery, and ten counts of armed criminal action. (Resp. Ex. B at 14-22.) He was also charged as a prior and persistent offender. (Id. at 267.)

These charges were related to three separate incidents that occurred in the Central West End in the City of St. Louis. The first occurred on July 17, 1998. The evidence at trial

was that Brian Copanas and Susan Fischer were walking to Fischer's vehicle at about 3:00 in the morning. (Resp. Ex. A, vol. III, at 193, 194, 210, 232, 233.) Armed with a silver gun, Petitioner approached them, said "[G]ive me all your shit," and took $60 to $100 from Fischer. (Id. at 234-37.) Petitioner grabbed Fischer's breasts, forced her to remove her clothing, and then ran away. (Id. at 202-03, 242.) Fischer and Copanas identified Petitioner in separate line-ups as their assailant. (Id. at 205-06, 247.)

The second incident occurred ten days later, around 10:30 at night. John Deschamps and Amy Nickolai were walking to their friend's residence. (Resp. Ex. A, vol. IV, at 292-93, 319.) Armed with a silver gun, Petitioner asked them for their money and jewelry; they had neither. (Id. at 295, 322.) Deschamps identified Petitioner in a photograph. (Id. at 298.) Nickolai identified Petitioner from a line-up. (Id. at 329.)

The third incident took place two days later, on July 29, between 9:00 and 10:00 at night, when Jennifer Hohenberg and Devon Perez were walking home from a restaurant in the Central West End. (Resp. Ex. A, vol. III, at 265-66.) Petitioner approached them, cocked his gun, and said "Open your wallets." (Id. at 269.) Petitioner got some money from Perez, but did not want her jewelry after Perez claimed that it was fake. (Id. at 273-75.)

The same night, police officers were conducting an undercover operation in the Central West End to try to find the robber with the silver gun. (Resp. Ex. A, vol. IV, at 341-42.) At approximately 10:00 that night, before beginning the operation, two police officers noticed a woman, Perez, with a "look of shock or horror." (Id. at 343.) Another woman, Hohenberg, was approaching a black man who stood within a few feet of Perez. (Id. at 344.)

The officers stopped their car near the man as he walked away from the women, identified themselves as police officers, and told him they needed to talk to him. (Id. at 346-47.) The man ran. (Id. at 347.) He had a silver gun in his hand. (Id. at 348.) The officers gave chase and caught the man in a nearby apartment building. (Id. at 348-52.) Hohenberg identified Petitioner at the scene. (Resp. Ex. A, vol. III, at 279, 280; vol. IV at 359.)

Following a jury trial in July 1999, Petitioner was found guilty of four felonies relating to the events on July 17 – one count of first degree robbery; two counts of armed criminal action; one count of attempted robbery; one count of possession of a defaced firearm – and four felonies relating to the events on July 29 – two counts of first degree robbery; one count of first degree trespass; and two counts of armed criminal action. (Resp. Ex. B at 228-31, 234, 236-38.) He was found not guilty of charges of one count of resisting arrest, two counts of first degree robbery, two counts of attempted first degree robbery, and two counts of armed criminal action. (Id. at 232-33, 235, 239-43.) The trial court directed a verdict on the remaining four counts. (Id. at 138.)

Petitioner filed a timely motion for judgment of acquittal notwithstanding the jury's verdict or, in the alternative, for a new trial. (Id. at 262-66.) He alleged fifteen grounds for relief. Specifically, the trial court erred by: (1) overruling his motion to strike for cause juror Johnnie Nangle[1] because he was a manic depressive on medication; (2) overruling his motion to strike for cause juror Robin Neal because he had indicated that many people would

---

[1] Nangle did not sit on the jury. (Resp. Ex. B at 132.)

have had to be wrong for Petitioner to be innocent; (3) denying his motion in limine to preclude the State from admitting evidence about his attempt to escape from custody the day before trial; (4) denying his motion to suppress the identifications at the line-up and show-up because they were suggestive; (5) denying his motion to suppress evidence, specifically the gun, the money, and the keys taken from Petitioner; (6) admitting into evidence the gun and ammunition seized from him during his unlawful detention; (7) admitting four of the State's exhibits without proper foundation, specifically the gun, ammunition, handcuff key, and a line-up photograph; (8) denying his motion for a mistrial after Sergeant John Frank testified, in violation of the ruling granting Petitioner's motion in limine, about a Missouri identification card with Petitioner's photograph and another name; (9) denying his request to modify an instruction concerning the effect of prior convictions on credibility; (10) denying his request to modify an instruction to say that presence at the scene of a crime is not a sufficient basis for conviction; (11) overruling his objection to the prosecutor's remarks during the rebuttal portion of closing argument that improperly shifted the burden of proof to the defense; (12) overruling his motion for acquittal because there was insufficient evidence to sustain the findings of guilt; (13) overruling his objection to the reasonable doubt instruction; (14) permitting the convictions for the robbery of Devon Perez because there was insufficient evidence to sustain the convictions; and (15) overruling his objection that there was insufficient evidence to support the finding that he was a prior and persistent offender. (Id.) His motion was denied without a hearing. (Id. at 266.)

Petitioner was sentenced as a prior and persistent offender to an aggregate term of ninety-five years imprisonment. (Id. at 267-73.)

Petitioner appealed on two grounds. (Resp. Ex. C at 16-17.) He argued that the trial court had erred first by denying his motion for a mistrial after Sergeant Frank's testimony about the identification card and, second, by denying his motion to suppress the identifications of Copanas, Fischer, Nickolai, and Deschamps because such identifications were suggestive. (Id.)

Petitioner's appeal was denied. **State v. Coleman**, 30 S.W.3d 836 (Mo. Ct. App. 2000) (per curiam). Addressing the first claim, the state appellate court found that:

> At trial, Sergeant John Frank identified Exhibit 12, which was a close-up photograph of the contents of the Pontiac Grand Am, including an identification card bearing [Petitioner's] photograph with another name. The court admitted this exhibit without objection. The prosecution then asked Sergeant Frank to describe the items shown in the picture. Sergeant Frank described a Missouri's non-driver's license containing [Petitioner's] photograph and the name "Nathan Louis Dixon."
>
> After the prosecutor began his next question, defense counsel interposed an objection "based on my previous motion in limine." Counsel approached and defense counsel requested a mistrial. The prosecutor explained that it was necessary to elicit testimony that the identification found in the car was [Petitioner's] in order to tie [Petitioner] to the vehicle, which was parked at the scene of this crime and matched the description of a vehicle seen leaving the scene in another incident which was the subject of other charges before the jury. The prosecutor pointed out that the photograph had already been shown to defense counsel and had been admitted without objection. The court sustained [Petitioner's] objection, denied the motion for mistrial, ordered that the names on all of the identification cards in the photograph be blacked out, and offered to instruct the jury to disregard the statement. Defense counsel declined to have the jury so instructed for strategic reasons.

> For his first point [Petitioner] contends that the trial court erred in denying his motion for mistrial following Sergeant Frank's testimony regarding the alias on [Petitioner's] nondriver's license. [Petitioner] argues that this constituted evidence of other uncharged crimes, implied that [Petitioner] was of bad moral character, and diverted the jury's attention from the real issues in the case.
>
> . . . .
>
> The testimony in question concerned an identification card bearing [Petitioner's] picture and a different name. Use of an alias does not constitute clear evidence associating [Petitioner] with other crimes. The fact that [Petitioner] had an identification card with another name does not sufficiently constitute clear evidence of another crime to allow us to conclude that the trial court abused its discretion in refusing to declare a mistrial.

(Resp. Ex. E at 5-6.) (Alterations added; internal quotations omitted.)

Addressing the second claim, the state appellate court concluded that the point had not been preserved because trial counsel had not objected to the identifications when they had been made. (Id. at 6.) Additionally, the court concluded that (a) there were no extraordinary circumstances "to justify reviewing this argument as a matter of plain error," and (b) the issue with respect to Nickolai's and Deschamps' identifications was moot because Petitioner had not been found guilty on charges relating to those two individuals. (Id.)

Petitioner requested that his case be transferred to the Missouri Supreme Court; his request was denied. **Coleman**, 30 S.W.3d at 836.

Petitioner next filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Resp. Ex. F at 4-16.) The motion was amended by appointed counsel and alleged that trial counsel had been ineffective for failing to (1) disqualify juror Anthony L. Smithers for cause or using a peremptory strike when Smithers agreed that a

defendant might say anything to avoid a conviction[2] and (2) object when the prosecutor called Petitioner a "clown" during closing argument." (Id.)

Trial counsel was the only witness to testify at the evidentiary hearing on the motion. (Resp. Ex. G.) She testified that she had no independent recollection of the "Smithers" issue, but it was her normal practice to strike jurors least likely to help the defense or most likely to hurt the defense and she applied this practice in Petitioner's case. (Id. at 7-10.) Counsel also testified that she did not believe that every instance of name-calling by a prosecutor during closing argument warranted an objection and that her decision would depend on how bad the name was and what the surrounding circumstances were at the time. (Id. at 17-18.)

The court denied Petitioner's motion, concluding that (1) trial counsel was not ineffective for failing to strike Smithers and that, even if striking him would have been appropriate, Petitioner did not suffer the requisite prejudice because Smithers had merely agreed that a defendant "might" say anything to get out of trouble and had not said that he would draw an adverse inference if Petitioner did not testify, and (2) trial counsel was not

---

[2]The following exchange was cited in support of this claim:

[Trial counsel]: Anybody else? A defendant who testifies on his own behalf would say anything, anything to save himself. Anybody agree with that? That a person who's accused of a crime might just say anything to get out of trouble? I see a hand. Mr. Smithers?

Smithers: I agree with that.

(Resp. Ex. A, vol. II, Tr. at 142)

ineffective for failing to object to the prosecutor's name-calling because it did not impair Petitioner's right to a fair trial. (Id. at 69-71.)

Petitioner appealed, arguing only that his trial counsel had been ineffective for failing to disqualify Smithers or for not peremptorily striking him. (Resp. Ex. H.) The appellate court disagreed, finding that Smithers had not indicated that he would automatically disbelieve Petitioner and that Petitioner had failed to show that Smithers was actually biased against Petitioner. (Resp. Ex. J.)

Petitioner next sought habeas relief from the Missouri Supreme Court, arguing that he had received ineffective assistance of direct appeal counsel when appellate counsel failed to raise all the grounds that had been raised in his motion for a new trial and to raise a confrontation clause claim based on the absence of Perez[3] at his trial. (Pet'r Resp. Ex. 1.) His petition was denied. (See No. SC86819 (Mo. June 21, 2005) (www.courts.mo.gov/casenet/cases).

Petitioner now seeks § 2254 relief on seventeen grounds: grounds one through fourteen are the first fourteen grounds raised in his motion for new trial; ground fifteen is a claim that the trial court plainly erred in denying his motion to suppress the in-court identifications of Copanas, Fischer, Nickolai, and Deschamps; ground sixteen is a claim of ineffective assistance of appellate counsel for not raising the fourteen grounds in his direct appeal and for not presenting the Perez confrontation claim; and ground seventeen is a claim

---

[3]Perez was in Washington D.C. at the time of trial. (Resp. Ex. A, vol. III, at 265.)

trial counsel was ineffective for not moving to strike or peremptorily striking Smithers. Respondent argues that the eighth and seventeenth grounds are without merit based on the appellate courts' reasoning. The remaining grounds are procedurally barred by Petitioner's failure to raise them in his direct appeal (grounds one through seven, nine through fourteen), in his post-conviction motion and appeal (ground sixteen), or in his motion for new trial (ground fifteen).

## Discussion

Procedural Default. Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991). "Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) (en banc) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual

record should the matter proceed to federal court."). "To satisfy the exhaustion requirement, [a habeas petitioner] must show that he either made a fair presentation of his claims to the state courts or that he has no other presently available state remedies to pursue." **Gentry v. Lansdown**, 175 F.3d 1082, 1083 (8th Cir. 1999) (alteration added). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or he presents his claims in a manner that entitles him to a ruling on the merits." **Id.** "The question is not whether the state court *could have relied* on the state procedural bar to reject the federal constitutional claim, but instead whether the court *actually relied* on the procedural bar as an independent basis for its disposition of the case." **Middleton v. Roper**, 455 F.3d 838, 856 (8th Cir. 2006).

It is undisputed that Petitioner did not raise fourteen of the fifteen grounds raised in his motion for new trial in his direct criminal appeal. These fourteen grounds were raised in his pro se brief to the Missouri Supreme Court in support of his habeas petition filed pursuant to Missouri Supreme Court Rule 91.[4] (See Docket Entries for Coleman v. Roper, SC86819 (Mo. 2005), www.courts.mo.gov/casenet/cases/searchDockets.do.) This petition was denied without discussion two weeks after Petitioner paid the partial filing fee. (Id.) "After Coleman [v. Thompson, 501 U.S. 722 (1991)], there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal

---

[4]Petitioner did not style his pleading as a petition for a writ of habeas corpus. Rather, he titled it as a motion for leave to file a handwritten brief and filed it with the Missouri Supreme Court after the appellate court rendered its opinion. This motion was construed by the Missouri Supreme Court as a Rule 91 petition.

issue." **Byrd v. Delo**, 942 F.3d 1226, 1232 (8th Cir. 1991) (alteration added). Accord **Gentry**, 175 F.3d at 1083. Thus, Petitioner's failure to fairly present his fourteen grounds to the state courts creates a procedural default. See **Carter v. Bowersox**, 265 F.3d 705, 713 (8th Cir. 2001); **Antwine v. Delo**, 54 F.3d 1357, 1371 (8th Cir. 1995).

Consequently, the merits of these fourteen grounds may not be reached "unless [Petitioner] can show cause and prejudice for the default, or actual innocence."[5] **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added). "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original).

Petitioner urges in his traverse that the Court consider the "uneven playing field" on which he must present his case. Insofar as this exhortation may be construed as advancing

---

[5]Petitioner does not allege actual innocence.

Petitioner's pro se status as cause for his default, it is unavailing. See **Sherron v. Norris**, 69 F.3d 285, 290 (8th Cir. 1995); **McCoy v. Lockhart**, 969 F.2d 649, 650 (8th Cir. 1992).

Petitioner argues in his sixteenth ground that his appellate counsel was ineffective for failing to raise in his direct appeal all the grounds in his motion for new trial. A claim of ineffective assistance of trial or appellate counsel may be cause for a procedural default, however, only if properly raised as an independent claim in state court. **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003); **Williams v. Kemna**, 311 F.3d 895, 897 (8th Cir. 2002). In Missouri, a claim of ineffective assistance of appellate counsel must be raised in a Rule 29.15 motion. Mo.S.Ct.R. 29.15(a). Once raised, it must also be presented in an appeal from the denial of post-conviction relief. See **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005). Only two grounds, both alleging ineffective assistance of trial counsel, were raised in Petitioner's Rule 29.15 motion and only one was raised in the resulting appeal. Petitioner did raise his claim of ineffective assistance of appellate counsel in his Rule 91 petition. As noted above, this is neither a fair presentation of the claim or cause for his procedural default of the fourteen grounds in his motion for new trial.[6]

Petitioner also argues that his post-conviction counsel was ineffective for not raising in the amended Rule 29.15 motion the issue of ineffective assistance of appellate counsel on

---

[6]Petitioner also presented the grounds originally raised in his motion for new trial in his pro se Rule 29.15 motion. This is not a fair presentation because, first, claims of trial court error cannot be raised in a Rule 29.15 motion, see Mo.S.Ct.R. 29.15(a), and second, the claims were not raised in his amended Rule 29.15 motion or in his subsequent appeal. See **Interiano v. Dormire**, 471 F.3d 854, 857 (8th Cir. 2006) (finding that failure of post-conviction counsel to raise claims that had been presented in pro se motion did not excuse procedural default).

direct appeal. "A defendant, however, has no constitutional right to effective assistance of post-conviction counsel." **Sweet v. Delo**, 125 F.3d 1144, 1151 (8th Cir. 1997). "Absent a constitutional right, [Petitioner] cannot claim ineffective assistance of post-conviction counsel as cause for his procedural default." **Id.** (alteration added). "[T]his principle applies to claims of ineffective assistance of Rule 29.15 counsel in Missouri." **Id.** (alteration added). See also **Interiano**, 471 F.3d at 857 (finding that claims raised in pro se motion were procedurally barred by post-conviction counsel's failure to raise them in amended motion).

Petitioner next argues that the in-court identifications of him by Copanas, Fischer, Nickolai, and Deschamps were unconstitutional. The state appellate court declined to reach the merits of Petitioner's argument that the in-court identifications of Fischer and Deschamps were unconstitutional because that argument had not been raised in his motion for new trial. Consequently, for the reasons set forth above, the issue of the identifications by Fischer and Deschamps is procedurally barred. See **Niederstadt v. Nixon**, 505 F.3d 832, 835 (8th Cir. 2007) ("Federal habeas relief may not be granted on a claim that the state appellate court declined to address because the petitioner failed to meet a state procedural requirement constituting an independent and adequate state ground . . . that is firmly established and regularly followed . . . .") (internal quotations omitted) (alterations added). The court *did* reach the issue of the identifications of Nickolai and Copanas, finding such identifications to be moot because Petitioner had been acquitted of the charges involving them. This issue is not procedurally barred, but is moot and without merit.

Two of Petitioner's grounds are not procedurally barred: ground eight challenging the testimony of Sergeant Frank and ground seventeen challenging trial counsel's failure to remove Smithers.

Ground Eight: Sergeant Frank's Testimony.  The state appellate court found no constitutional error in the admission of Sergeant Frank's testimony, in violation of Petitioner's motion in limine precluding testimony of any alias, about the identification card with Petitioner's picture but not his name.  Frank had specifically testified that he had found various items, including forms of identification, in a car at the scene that belonged to Petitioner.  When the prosecutor asked Frank whose name was on one of the identification cards, Frank replied, "Nathan Louis Dixon."  (Resp. Ex. A, vol. IV. at 365.)  The trial court sustained Petitioner's objection, but denied his motion for a mistrial.  (Id. at 366, 368.)  The court offered to instruct the jury to disregard Frank's response; Petitioner's trial counsel declined out of concern that such an instruction would emphasis the issue.  (Id. at 369.)  At trial counsel's suggestion, the court blacked out the name on the identification card.  (Id. at 370.)

"[I]n habeas corpus proceedings, it is not within [the federal courts'] province to 'reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)) (alterations added).  See also **Taylor**, 329 F.3d at 968 ("A state's interpretation of its own law is virtually unreviewable by a federal court.").  Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so

conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne**, 411 F.3d at 917 (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)) (alteration added). Accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006); **Amrine v. Bowersox**, 238 F.3d 1023, 1032-33 (8th Cir. 2001); **Bounds v. Delo**, 151 F.3d 1116, 1119 (8th Cir. 1998). "[T]his due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994) (alteration added). Consequently, federal habeas review of an alleged due process violation in a state court conviction is narrow. **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).

There was no due process violation by the admission of Sergeant Frank's testimony. The testimony was brief and relevant to tying Petitioner to a car found at the scene. The other evidence against him was strong, and his attorney refused a limiting instruction.

<u>Ground Seventeen: Ineffective Assistance of Trial Counsel.</u>  Petitioner contends that his trial counsel was ineffective for not moving to strike or not peremptorily striking Smithers from the jury. The state appellate court concluded that Smithers had not indicated that he would automatically disbelieve Petitioner and that Petitioner failed to show that Smithers was actually biased against Petitioner.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting Kimmelman v. Morrison, 477 U.S.

365, 374 (1986)). "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). "There is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish prejudice, a petitioner "must demonstrate 'a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Kellogg**, 176 F.2d at 452 (quoting McGurk v. Stenberg, 163 F.3d 470, 473 (8th Cir. 1998)). The question of prejudice from counsel's performance need not be reached, however, if the

performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001); **Amrine**, 238 F.3d at 1031.

In the instant case, Petitioner has failed to show prejudice.

During voir dire, Smithers merely agreed that a defendant "might" say anything to get out of trouble. This alone is not sufficient to show that Smithers would be impartial or that Petitioner was prejudiced. Smithers did not say that he would disbelieve Petitioner's testimony or that he would draw an adverse inference from Petitioner if Petitioner did not testify. (Resp. Ex. A, vol. I, at 69.) Indeed, there was no response from any juror, including Smithers, when the voir dire panel was asked whether they might make a negative inference if Petitioner decided not to testify. (Id. at 143.)

## **Conclusion**

For the foregoing reasons, Petitioner's § 2254 claims are without merit or are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Larry Lee Coleman is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of May, 2008.